UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD MEYER,<br><br>                      Plaintiff,<br><br>    v.<br><br>OBERTO SAUSAGE COMPANY,<br><br>                      Defendant. | CASE NO. 3:17-cv-05076-RJB<br><br>ORDER DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT |

THIS MATTER comes before the Court on Plaintiff's Motion to Enforce Settlement Agreement and Terms (Dkt. 33). The Court has considered the Motion to Enforce Settlement Agreement and Terms and the remaining record. For the reasons provided herein, Plaintiff's Motion to Enforce Settlement Agreement and Terms (Dkt. 33) should be denied.

**I.      RELEVANT FACTS AND PROCEDURAL HISTORY**

In a complaint originally filed in Pierce County Superior Court on January 6, 2017, Plaintiff Dr. Richard Meyer, a sixty-nine-year-old former employee of Defendant Oberto Sausage Company, alleges that Defendant violated the Washington Law Against Discrimination and Age Discrimination in Employment Act and demoted and terminated Dr. Meyer for reporting or encouraging the reporting of food safety issues to government regulators. Dkt. 1. On

February 1, 2017, Defendant removed the case to this Court on the grounds of federal question, supplemental, and diversity jurisdiction. Dkt. 1.

Parties began settlement discussions on October 15, 2018. Dkt. 35, at 134. On December 05, 2018, Defendant's counsel emailed Plaintiff's counsel the following:

> I am willing to follow up on our telephone call … when you extended a new settlement demand of $[] contingent on the parties entering into a mutual release that includes a release by Oberto of any claims related to the mayo[nnaise] patent.
>
> []
>
> *At this time, our client has authorized me to extend a new settlement offer of $[], which is $[] above the middle of its range at mediation.* Oberto would also be willing to release any claims related to the mayo patent …. [T]his offer *is contingent on the parties entering into a mutually agreeable settlement agreement that includes a release of all* claims, and we will need to discuss and agree upon the non-monetary terms, but we wanted to start with the monetary amount.

Dkt. 35, at 134–35 (emphasis in original, filed as a declaration by Plaintiff's counsel in support of the Motion to Enforce Settlement Agreement and Terms).

On December 17, 2018, Plaintiff's counsel responded:

> We have a deal. []
>
> The patents for the salt, mayo and cold pasteurization belong to Dr. Meyer.
>
> The Patents for the acid stable meat and meat emulsions are Oberto's, but Oberto let them lapse and they are now in the public domain.
>
> []
>
> So please forward me the agreement so that I may review and get to my client for signature.

Dkt. 35, at 134.

On January 10, 2019, Plaintiff's counsel wrote: "Just checking in on this settlement agreement, what is the status? Would you mind e-mailing the Court to advise them that the matter has resolved[?]" Dkt. 35, at 53.

On January 11, 2019, with Plaintiff's consent (Dkt. 35, at 64), Defendant filed a Notice of Resolution, requesting sixty days to finalize the resolution. Dkt. 31. The Court ordered Dismissal/Settlement papers due by March 15, 2019. Dkt. 32.

On January 24, 2019, Defendant's counsel provided Plaintiff's counsel with an amended proposed Settlement Agreement and Release ("Proposed Agreement"), which appears to have included monetary and non-monetary terms, including a release of any ownership rights to four published patents, and providing Oberto with a worldwide license to use the patents. Dkt. 35, at 132–33, 137–38. The Proposed Agreement was apparently unsigned by either party. Dkt. 35, at 142.

On January 25, 2019, Plaintiff's counsel expressed concern about the worldwide patent licensing, writing that "[t]his issue was not raised prior to our agreement to settle this matter." Dkt. 35, at 132. The following day, Defendant's counsel replied that "[t]his is a standard and necessary term that goes hand in hand with settling the patent issues. We will review and respond to your proposed language once we have reviewed it with Oberto and its patent attorney." Dkt. 35, at 132.

Defendant's counsel declared that, on January 28, 2019, Plaintiff's counsel sent a letter discussing issues with the Proposed Agreement and submitted a redlined version removing the licensing language. Dkt. 37. Plaintiff's counsel, Defendant's counsel, and Defendant's patent attorney participated in a February 7, 2019, conference call to discuss the Proposed Agreement issues, whereupon Defendant's counsel agreed to send Plaintiff's counsel an updated proposed

settlement agreement, which Defendant's counsel emailed to Plaintiff's counsel on February 8, 2019. Dkt. 37. On February 13, 2019, Plaintiff's counsel left a voicemail stating, in part, "Dr. Meyer is just not willing to agree to the license …. I'm going to have to bring a motion to enforce the settlement agreement." Dkt. 37, at 2–3.

On February 13, 2019, Plaintiff filed the instant Motion to Enforce Settlement Agreement and Terms (Dkt. 33), to which Defendant responded in opposition (Dkt. 36) and Plaintiff replied (Dkt. 41).

## II. DISCUSSION

### A. WASHINGTON STATE SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (quoting *Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir. 1996)).

### B. PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

Generally, a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). However, "[s]ummary enforcement is ill-suited to situations presenting complex factual issues related either to the formation or the

consummation of the settlement contract, which only testimonial exploration in a more plenary proceeding is apt to satisfactorily resolve." *Id.* (internal quotations and citations omitted). Accordingly, "[w]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987).

In Washington, "[t]he validity and enforceability of a settlement agreement is determined by reference to the substantive law of contracts." *Veith v. Xterra Wetsuits, L.L.C.*, 144 Wn. App. 362, 366 (2008) (internal citation omitted). "A contract requires offer, acceptance, and consideration." There is no dispute over whether there was consideration here. The Parties' dispute is whether there was mutual assent to settlement agreement terms in their email exchanges.

"[F]or a contract to form, the parties must objectively manifest their mutual assent" to terms that are "sufficiently definite." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177-78 (2004). "Generally, manifestations of mutual assent will be expressed by an offer and acceptance." *Keystone*, 152 Wn.2d at 178. "There is no valid contract until an offer is accepted." *Veith*, 144 Wn. App. at 366 (internal citation omitted). "Acceptance is an expression (communicated by word, sign, or writing to the person making the offer) of the intention to be bound by the offer's terms." *Id.* "A contract exists when the intention of the parties is plain and the terms of a contract are agreed upon even if one or both of the parties contemplated later execution of a writing." *Veith,* 144 Wn. App. at 366.

To determine whether a contractual relation has been established by informal writings, where the parties have in mind the subsequent signing of a formal written contract, it is necessary to inquire whether (1) the subject matter has been agreed upon, (2) the terms are all

stated in the informal writings, and (3) whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal written contract. *Leowi v. Long*, 76 Wash. 480, 484 (1913).

First, the subject matter of the putative settlement is disputed, especially the scope of any agreement regarding the ownership and licensing of the patents. Second, the terms are disputed, especially the inclusion of licensing rights for the patents. Non-monetary terms were specifically not agreed upon in the December 05, 2018, email from Defendant's counsel ("[W]e will need to discuss and agree upon the non-monetary terms[.]" Dkt. 35, at 135). Finally, Defendant's counsel did not intend a binding agreement prior to the time of signing a written settlement agreement ("[T]his offer is *contingent on the parties entering into a mutually agreeable settlement agreement that includes a release of all* claims[.]" Dkt. 35, at 135 (emphasis in original)).

The Parties never agreed on a final settlement agreement. The Proposed Agreement was not signed by either party (Dkt. 35, at 142); the Parties apparently continued to edit the Proposed Agreement (Dkts. 35, at 125; and 37, at 2); the Parties did not objectively manifest their mutual assent to the terms exchanged by email between December 05, 2018, and January 26, 2019 (Dkt. 35; *see also* Dkt. 37[1]). Therefore, Plaintiff's Motion to Enforce Settlement Agreement and Terms (Dkt. 33) should be denied.

---

[1] Defendant's counsel declared that:

> I never agreed on behalf of Oberto to include as part of the settlement of this case a full and complete release for all of the patents identified by Plaintiff on the terms Plaintiff now suggests. Throughout my discussions with Plaintiff's counsel, there was always an understanding that the agreement on the settlement amount was contingent on the parties agreeing on the non-monetary terms such as the terms of the release of the relevant patents and including the language of the formal Settlement Agreement and Release.

Dkt. 37, at 1–2.

Counsel are cautioned not to advise the Court of a settlement prematurely. The Court will reinstate the trial date of June 3, 2019, and pretrial dates found in Dkt. 30 on its calendar.

### III. ORDER

Therefore, it is hereby **ORDERED that:**

- Plaintiff's Motion to Enforce Settlement Agreement and Terms (Dkt. 33) is **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 6th day of March, 2019.

*/s/ Robert J. Bryan*

ROBERT J. BRYAN
United States District Judge